FALL 1809,
First District.

DUNCAN vs. YOUNG.

Notice on a pro-
tested bill.

THIS was an action on a bill of exchange, drawn by M. G. Cullen of New-Orleans, in favour of the defendant, on Liverpool, payable in eight months after date, on the 29th of April 1807, and endorsed by the defendant to the plaintiff, who resided in Charleston.

THE plaintiff's agent in Liverpool, presented the bill for acceptance on the 21st of July following, and the drawee refused to accept it. But of this fact the only evidence was the protest for non-payment, in which it was stated that the bill had been regularly protested for non-acceptance. The plaintiff received information of the refusal of the drawee, on the 25th of September, and on the next day put a letter in the post-office, informing the defendant of it, and the letter reached him on the 24th of October. On the 15th of October, the defendant attached the property of the drawer.

ON the part of the defendant, it was proven that two ships left Liverpool for New-Orleans about the middle of August 1807, one of which arrived at the Balize on the 11th of October following, and reached the city on the 15th.

*Alexander* and *Duncan* for the defendant. There has been a want of due diligence in giving notice. The notice itself was insufficient, as the defendant was informed that the bill was noted for non-acceptance, while he ought to have been apprised of the protest.

I<small>T</small> is the duty of the holder of a dishonored bill to give the earliest notice to the person to whom he intends to resort for payment; and if he fail, without being able rationally to account therefore, he will not recover. 2 *Smith* 196, *Burrows* 2670. In the present case, two ships left Liverpool, bound directly to New-Orleans, after the drawee's refusal to accept and no notice was given by either of them to the defendant. The plaintiff knew that the defendant resided in New-Orleans, and was therefore bound to possess his agent at Liverpool with that information, in sending the bill, that in case of an unfavourable contingency notice might be sent to the defendant, without delay.

N<small>OTICE</small> of a foreign bill having been noted for non-acceptance, is not sufficient, there must be notice of the protest itself. There must be a protest for non-acceptance, and the want of it cannot be supplied by witnesses. *Buller's N. P.* 271. *Chitty* 90.

*Ellery* and *Robertson* for the plaintiff. It is not believed that there can be a doubt with regard to the regularity of the notice: but it is said it came in a circuitous, while it might have come in a direct way.—That the agent forwarded the information to his principal at Charleston, who sent it by the post to New-Orleans, while if the opportunity of the ships had been improved the defendant might have had notice nine days earlier,

E

F<small>ALL</small> 1809,
First District.

D<small>UNCAN</small>
*vs.*
Y<small>OUNG</small>

FALL 1809,
First District.

BROWN
*vs.*
FORT & GIRAUD.

and might have taken measures for his security. But it is in evidence that on the 15th of October, on the very day of the arrival of the ship which reached the city first, an attachment was issued at the instance of the defendant, and the property of the drawer levied upon, so that it appears he had as early information as could possibly have been given, and took measures accordingly.

The protest for non-payment to which all courts give credit, proves that the bill was duly protested for non-acceptance. The plaintiff perhaps did not use the legal term in his notice, but he informed the defendant that the bill was dishonored, which is sufficient.

*The Court*, LEWIS, *J. alone*, charged the jury in favour of the plaintiff on each of the points, and there was a

VERDICT FOR THE PLAINTIFF.

꙾ ━◉◉◉━

*BROWN* vs. *FORT & GIRAUD.*

The consideration of a note enquired into.

ACTION upon a note of hand. The ship Clara, owned by Foster & Giraud of New-York, being libelled in the district court of the United States, in New-Orleans, under the act of Congress, prohibiting the importation of slaves, 8 *Laws U. S.* 262, the defendants were desired by the owners to act for them, and consequently, the ship being afterwards condemned and sold, they bought her in, and gave their note for the